**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 8, 2014
Date Decided: June 4, 2014

Harold W. T. Purnell, II
David W. Carickhoff, Jr.
Archer & Greiner, P.C.
300 Delaware Avenue, Suite 1370
Wilmington, Delaware 19801

William M. Kelleher
Gordon, Fournaris & Mammarella
1925 Lovering Avenue
Wilmington, Delaware 19806

> Re:   *In the Matter of Restatement of Declaration of Trust Creating the Survivor's Trust Created Under the Ravet Family Trust Dated February 9, 2012,*
> Civil Action No. 7743-VCG

Dear Counsel:

This Letter Opinion addresses the Petitioner's outstanding Motion to Alter or Amend Judgment or, in the Alternative, to Reconsider the Judgment, or, in the Alternative, for Relief from Judgment. The judgment in question is my bench decision of January 29, 2014, in which I found that the Petitioner's claims are time-barred. The Petitioner in this action is the son of Shirley Ravet, settlor of the Restatement of Declaration of Trust Creating the Survivor's Trust Created Under the Ravet Family Trust Dated February 9, 2012 (the "Trust"). He brings this action to contest the validity of the Trust on the basis that it was the product of his sisters' exercise of undue influence over their mother, the settlor. On January 29, 2014, the Court conducted an evidentiary hearing on the limited issue of whether

the Petitioner had been given written notice of the Trust by March 27, 2012, the last day on which such notice would effectively time-bar this action pursuant to 12 *Del. C.* § 3546, Delaware's pre-mortem validation statute. That Section provides:

> (a) A judicial proceeding to contest whether a revocable trust or any amendment thereto, or an irrevocable trust was validly created may not be initiated later than the first to occur of:
>
>> (1) One hundred twenty days after the date that the trustee notified in writing the person who is contesting the trust of the trust's existence, of the trustee's name and address, of whether such person is a beneficiary, and of the time allowed under this section for initiating a judicial proceeding to contest the trust provided, however, that no trustee shall have any liability under the governing instrument or to any third party or otherwise for failure to provide any such written notice. For purposes of this paragraph, *notice shall have been given when received by the person to whom the notice was given and, absent evidence to the contrary, it shall be presumed that delivery to the last known address of such person constitutes receipt by such person.*[1]

At that hearing, the parties disputed the meaning of the italicized language above: the Respondent contended that, absent evidence demonstrating that written notice was not delivered to the Petitioner's *last known address*, delivery of that notice was effective to trigger a presumption of receipt, while the Petitioner argued that "absent evidence to the contrary" refers to any evidence—including the Petitioner's own self-serving testimony—indicating that he had not *actually received* the notice. If the statutory language refers to mailing notice to the last

---

[1] 12 *Del. C.* § 3546(a) (emphasis added).

known address, it is unquestionable that the Respondent is entitled to the statutory presumption of receipt; if it refers to receipt itself, my decision must turn on a review of the "evidence to the contrary" of receipt.

Evidence presented at the January 29 hearing included testimony from Daniel Hayward, counsel for the Trust's co-trustees, indicating that written notices were mailed to the Petitioner's last known address and P.O. Box by first class mail on February 23, 2012; that notices were mailed to the Petitioner's last known address and P.O. Box by certified mail on the same day, February 23, 2012, but that, after delivery was twice attempted and two package slips left, those letters were returned to Hayward; and that a Federal Express package containing notice of the Trust was delivered to the Petitioner's home address on March 27, 2012. At the conclusion of the hearing, I issued a bench ruling, in which I explained:

> So the question is, given the fact that there was first class mail that did not come back, sent to the correct address, and that there were more than 30 days for that to have been delivered sufficient to toll this suit, whether I should find that there has been delivery to the last known address under the statute. It seems clear to me that the evidence is overwhelming here that there was delivery during that time, prior to March 28. Why do I say that? Because the only evidence that that wasn't delivered is the testimony of the Petitioner here. He obviously has an interest in this matter, but that doesn't necessarily make his testimony less than credible. However, to believe him, I would have to believe that the first class mail to his home went missing; the notice of certified mail to his home went missing; the first class mail sent to his post office box went missing; the notice of certified mail to his post office box went missing; two more notices of certified mail, one to his home and one to the post office box, went missing; all these things went missing. And yet the certified mail obviously went

3

through because we have the returns. So it seems incredible to me that all of these things can have gone missing, at least three of them in a post office box to which no one but the Petitioner had access, and that they simply disappeared. More than that, he testified that the Fed Ex, which we know was delivered to his house on the 27th, also went missing. I don't find that to be "evidence to the contrary of delivery," assuming that phrase modifies the delivery requirement [rather than the requirement that notice be sent to the "last known address"], because it's simply not credible evidence. It's absolutely not credible to me. . . . But in any event, I find no credible evidence that the first class mail was not delivered to this residence, to the extent that modifier applies. To the extent the modifier doesn't apply, I simply make a positive finding that given the two first class mailings and the two contemporaneous certified mailings, which we clearly know reached his two addresses, that it is extremely likely that delivery was made before the 27th of March.[2]

On February 7, 2014, the Petitioner filed a Motion to Open Judgment to Allow Ruling on Motion in *Limine* and to Alter or Amend Judgment or, in the Alternative, to Reconsider the Judgment. On March 17, the Petitioner moved to amend that Motion to include a motion for relief from judgment, on the basis that:

> While preparing a letter to trustees of the various trusts involved in this action and actions pending in California, on March 3, 2014, Petitioner discovered first class mail envelopes from counsel for the Co-trustees—one envelope addressed to his residence and one envelope addressed to his P.O. Box. The postage stamp on each envelope indicates that it was mailed on March 26, 2012—more than a month after counsel for the Co-trustees, Mr. Hayward, testified that he had sent such first class mailings. Upon opening the envelopes, Petitioner found in each of the two envelopes . . . an original cover letter signed and dated February 15, 2012 (with original signatures in blue ink) . . . .[3]

---

[2] Trial Tr. 125:13-128:13.
[3] Pet'r's Op. Br. in Supp. of Mot. to Amend at 2.

The Petitioner contends that the March 3 first class mailings constitute newly discovered evidence justifying relief from my January 29 ruling.

On May 8, 2014, I heard oral argument on all pending motions in this action. After argument, I issued a bench ruling denying the Petitioner's Motion to Open Judgment to Allow Ruling on Motion in *Limine*. This Letter Opinion addresses the Petitioner's pending Motion to Alter or Amend, Motion for Reconsideration, and Motion for Relief.

## I. Analysis

The Petitioner moves (1) to alter or amend the January 29 judgment, (2) for reconsideration of the judgment, and (3) for relief from the judgment. I address those Motions in turn, below.

### 1. Motion to Alter or Amend

The Petitioner brings his Motion to Alter or Amend pursuant to Court of Chancery Rule 59(e). "Under Rule 59(e), a motion to alter an Order may be granted if the plaintiff demonstrates (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice."[4]

The Petitioner suggests that his Motion to Alter or Amend is appropriate to correct several clear errors of law made in my January 29 bench ruling. Although

---

[4] *Nash v. Schock*, 1998 WL 474161, at *1 (Del. Ch. July 23, 1998).

the Petitioner's Motion to Alter or Amend seeks merely to restate arguments presented at trial, and to express disagreement with my resolution of those issues addressed at trial, I nevertheless address his contentions in turn. First, the Petitioner contends that in interpreting 12 *Del. C.* § 3546, I erred by "giving the Co-trustees the benefit of the statute's presumption of receipt even though the Co-trustees had no evidence to prove that their alleged first class mailings were actually delivered to Petitioner's home or P.O. Box."[5] Despite the Petitioner's suggestion, however, I determined in my bench ruling that "the evidence [presented at trial was] overwhelming . . . that there was delivery . . . ."[6] To the extent the Petitioner suggests I misunderstood the statute's presumption of receipt to require only that notice be mailed, as opposed to delivered, therefore, that argument must fail.

Second, the Petitioner suggests that I erred as a matter of law by "giving the Co-trustees the benefit of the statute's presumption of receipt even though 'evidence to the contrary' of receipt was presented."[7] The Petitioner fails to acknowledge, however, that in my January 29 bench ruling, I found that the Petitioner had presented "no credible evidence that the first class mail was not

---

[5] Pet'r's Op. Br. in Supp. of Mot. to Open J. at 5.
[6] Trial Tr. 125:20-21.
[7] Pet'r's Op. Br. in Supp. of Mot. to Open J. at 5.

delivered to this residence . . . ."[8]  Next, the Petitioner contends that I erred by "injecting the common law presumption concerning mailing into the statute's limited presumption of receipt . . ." and by "creating a burden of rebuttal for the Petitioner that does not exist under the statute . . . ."[9]  In fact, my bench ruling made no reference to that common law presumption, nor did I implicitly adopt or rely on it; instead, I construed only the language of the statute, determining that, to the extent the statute could be interpreted, as the Petitioner argued, to create a presumption of delivery (or receipt) rebuttable by "evidence to the contrary," such evidence must at a minimum be *credible* evidence.  I found, and continue to find, that no such credible evidence was presented.[10]  Importantly, I addressed the parties' interpretations of the statutory presumption *in the alternative*:  I did not determine whether "evidence to the contrary" modified mailing to the last known address *or* receipt, but explained that under *any* standard, evidence must be credible, and that such evidence is lacking here.

Finally, the Petitioner argues that I committed error because:

> The Court's decision effectively imposes a burden of diligence upon a notice party that does not exist under the statute.  Specifically, under the Court's ruling, a notice party now has a burden to diligence whether he could be presumed to have received notice sooner than

---

[8] Trial Tr. 128:5-8 (emphasis added).

[9] Pet'r's Op. Br. in Supp. of Mot. to Open J. at 5.

[10] The Petitioner contends that I failed to consider evidence apart from the Petitioner's self-serving testimony, including evidence of communications between the Petitioner and the settlor's legal counsel.  In fact, I did consider that evidence, but determined it was not credible evidence "to the contrary" of delivery.

7

when he actually received notice. However, this burden does not exist under the plain reading of the statute, which focuses on the party's receipt.[11]

Though expressing disagreement with my holding, that argument does not suggest *error*, and in fact runs contrary to the statutory presumption that "delivery to the last known address . . . constitutes receipt . . . ."[12] Of course, any presumption of receipt—anything short of a requirement that a respondent prove actual receipt— would result in the "burden of diligence" to which the Petitioner refers. For the reasons explained above, the Petitioner's Motion to Alter or Amend is denied.

## 2. Motion for Reconsideration

In addition to his Motion to Alter or Amend, the Petitioner brings a Motion for Reconsideration pursuant to Court of Chancery Rule 59(f). "A court may grant reargument under Rule 59(f) when it appears that 'the [c]ourt has overlooked a decision or principle of law that would have controlling effect or the [c]ourt has misapprehended the law or the facts so that the outcome of the decision would be [affected].'"[13]

The Petitioner contends that "the Court either erred as a matter of law in reaching its decision or misapprehended the facts or the law such that the outcome

---

[11] Pet'r's Op. Br. in Supp. of Mot. to Open J. at 7-8.
[12] 12 *Del. C.* § 3546(a).
[13] *Chrin v. Ibrix, Inc.*, 2005 WL 3334270, at *1 (Del. Ch. Nov. 30, 2005) (citing *Miles, Inc. v. Cookson Am., Inc.*, 677 A.2d 505, 506 (Del. Ch. 1995)).

8

is different than it would be without such misapprehension."[14]  The Petitioner's arguments that the Court erred as a matter of law under Rule 59(e), and that I misapprehended the law under Rule 59(f), are coterminous, and have therefore been addressed and rejected above.   The Petitioner's contention that I misapprehended the facts of this case must similarly be rejected.  The Petitioner suggests that the "Co-trustees have no evidence to prove that their alleged first class mailings were actually delivered to Petitioner's home or P.O. box."[15]  Despite that contention, I decline to reconsider my finding, based on Hayward's testimony, that "given the two first class mailings and the two contemporaneous certified mailings, which we clearly know reached [the Petitioner's] two addresses, that it is *extremely likely* that delivery was made before the 27th of March."[16]   The Petitioner also disputes my factual finding that his testimony provided no credible evidence to the contrary of delivery, and indicates that he "has produced 'evidence to the contrary' that he never *received* notice of the Trust until March 29, 2012 . . . ."[17]  The substance of the Petitioner's testimony at trial was that he never received three mailings and four notices left at his home.  That is the testimony I

---

[14] Pet'r's Op. Br. in Supp. of Mot. to Open J. at 3.
[15] *Id.* at 8.
[16] Trial Tr. 128:9-13 (emphasis added).  The Petitioner also contends that I misapplied the applicable evidentiary  burden, and that the evidentiary standard contemplated by the statute is clear and convincing evidence of delivery.  Oral Arg. Tr. 18:9-10.  Even if a showing of clear and convincing evidence is required by the statute, however, my finding that it was "extremely likely" that delivery was made satisfies such a standard.
[17] Pet'r's Op. Br. in Supp. of Mot. to Open J. at 9.

found not credible, and I continue to find it not credible. The Petitioner's Motion for Reconsideration is therefore denied.

## 3. Motion for Relief

Finally, the Petitioner brings a Motion for Relief from Judgment pursuant to Court of Chancery Rule 60(b), which permits this Court to relieve a party from a judgment under the following circumstances:

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[18]

The Petitioner contends that relief from judgment is appropriate under subsections (2), (3), and (6) of Rule 60(b). I address those contentions below.

*A. Newly Discovered Evidence*

In support of his Motion for Relief, the Petitioner primarily relies on Rule 60(b)(2), which provides that the Court may relieve a party from judgment based on newly discovered evidence. In order to obtain relief on that basis,

> the moving party must demonstrate that: (1) the newly discovered evidence has come to his knowledge since the trial; (2) that it could not, in the exercise of reasonable diligence, have been discovered for use at the trial; (3) that it is so material and relevant that it will

---

[18] Ct. Ch. R. 60(b).

10

probably change the result if a new trial is granted; (4) that it is not merely cumulative or impeaching in character; and (5) that it is reasonably possible that the evidence will be produced at the trial.[19]

The "newly discovered" evidence presented by the Petitioner consists of two first class envelopes, postmarked March 26, 2012, providing the Petitioner with written notice of the Trust. According to the Petitioner, Hayward's failure to testify at trial that, in addition to first class and certified mailings sent on February 23, 2012, Hayward mailed first class letters on March 26, 2012, demonstrates (1) that Hayward's testimony that first class letters were mailed on February 23 was false, and (2) that the first class letters described by Hayward at trial must have been mailed on March 26 rather than February 23.

The Petitioner's production of the March 26 mailings provides an insufficient basis for relief from judgment for at least two reasons. First, despite the Petitioner's contention that, "[a]s the envelopes had fallen between hanging file folders [in a box he used as a file cabinet] and out of sight, they could not in the exercise of reasonable diligence have been discovered for use at the January 29, 2014 hearing," I believe that with any minimal diligence the Petitioner would have discovered the March 26 mailings, which had been in his possession for almost two years prior to the January hearing. Perhaps more importantly, even if I were to admit those mailings as evidence, they would not alter my prior determination.

---

[19] *99-Year Lease Tenants of Lynn Lee Vill. v. Key Box 5 Operatives, Inc*., 2005 WL 5756435, at *3 (Del. Ch. Aug. 4, 2005).

11

Notably, the Petitioner contends that the March 26 mailings demonstrate that Hayward testified falsely, an argument that relies solely on the mailing's impeachment value. I find, however, that the facts that the Petitioner actually received the mailings and *never opened them*, but instead filed them away with other trust-related documents, and that he claims to have had no memory of those mailings until their re-discovery nearly two years after receipt, serve to further discredit the Petitioner's testimony that he never received any February 23, 2012 mailings. As a result, I deny the Petitioner's Motion on the basis of newly discovered evidence.

## B. Fraud or Misrepresentation

The Petitioner also claims that his Motion for Relief is appropriate under Rule 60(b)(3) on the basis of fraud, misrepresentation, or other misconduct. The Petitioner suggests that "[t]he newly discovered evidence indicates that Mr. Hayward's testimony concerning his attempts at noticing Petitioner of the Trust was, at best, a mistaken misrepresentation."[20] I find that it does not. The March 26 mailings indicate only that the Petitioner received at least one notice from Hayward. Those mailings indicate that it was the *Petitioner's* testimony at trial— that he never received any mailings providing notice of the Trust—that was false.[21]

---

[20] Pet'r's Op. Br. in Supp. of Mot. to Amend at 13.

[21] *See, e.g.*, Trial Tr. 59:1-5. I find unpersuasive the Petitioner's contention that, because the letters contained in the March 26 mailings were notarized and dated in February, those mailings

Those mailings do *not* require the Court to find a misrepresentation in Hayward's credible testimony that he "recall[ed] at the time [in February 2012] having the stacks of the certified mailing packages and stacks of the first class mailing packages laid out in [his] office and outside of [his] office, along with [his] paralegal, to make sure that [they] weren't missing anything when these went out,"[22] and that, "knowing that the first class mailings were picked up and sent out on the 23rd, there [was] no doubt in [his] mind that the first class mailings were sent at that same time because those packages would have been together."[23] The fact that a first class mailing accompanied the Federal Express mailing in March 2012 does not, to my mind, impeach Hayward's testimony that a prior mailing was sent on February 23 of that year. The Petitioner's Motion for Relief on the basis of fraud or misrepresentation is therefore denied.

*C. "Any Other Reason"*

Relief under Court of Chancery Rule 60(b)(6) is appropriate under circumstances constituting "an 'extreme hardship,' or [where] 'manifest injustice'

---

must have been sent instead of, rather than in addition to, the February first class mailings. That the notices contained in the "newly discovered" March mailings were notarized in February is unsurprising given the credible representation of Respondent's counsel that multiple copies of the notice letter were notarized in February for convenience. Oral Arg. 37:12-14. Further, the fact that the notice letters were notarized in February serves only to bolster the Trustee's testimony that notices were in fact first sent in February.

[22] Trial Tr. 9:17-22.

[23] *Id.* at 10:2-6.

13

would occur if relief were not granted."[24]  The Petitioner submits that "[t]he newly discovered information reveals that extraordinary circumstances exist in that the critical unsubstantiated testimony the Court relied upon in reaching its decision was unreliable and, at best, a mistaken misrepresentation."[25]  However, in support of his contention that "extraordinary circumstances" exist, the Petitioner suggests only that the March 26 mailings demonstrate a misrepresentation by Hayward. That argument has been rejected above, and accordingly does not provide an appropriate basis for relief under Rule 60(b)(6).

## II. Conclusion

For the foregoing reasons, the Petitioner's outstanding Motions are denied. However, because I find that the Motions were not brought in bad faith, I deny the Respondent's request to shift fees.  To the extent an Order is necessary for the foregoing to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[24] *Saito v. McCall*, 2004 WL 3048949, at *1 (Del. Ch. Aug. 18, 2004), *aff'd sub nom. Saito v. McKesson HBOC, Inc.*, 870 A.2d 1192 (Del. 2005).
[25] Pet'r's Op. Br. in Supp. of Mot. to Amend at 13-14.

14